FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 31 2012 ★
BROOKLYN OFFICE

D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X

ARNOLD REEVES,

                Plaintiff,

-against-

JERMAINE L. WILKINS,

                Defendants.

----------------------------------------------------------------- X

10-CV-2766 (ARR) (MDG)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

OPINION & ORDER

ROSS, United States District Judge:

On June 15, 2010, Arnold Reeves ("plaintiff"), currently incarcerated at the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"), filed this pro se action against Jermaine Wilkins ("defendant"), an employee of the Bureau of Prisons ("BOP") alleging that defendant made abusive comments toward plaintiff, engaged in "civil mail fraud" and forgery, and prevented plaintiff from lodging complaints about defendant's behavior with the BOP. Following defendant's filing of an initial motion to dismiss, plaintiff requested, and was granted, leave to amend. Defendant again moved to dismiss plaintiff's claims. Plaintiff thereafter sought leave to add purportedly related claims against the United States and the BOP, claims that defendant has opposed in supplemental briefing.[1] Currently before the court is defendant's motion to dismiss or, in the alternative, for summary judgment and plaintiff's proposed supplemental claims. Dkt. Nos. 35, 54, 55, 61. As stated below, defendants' motion is granted, plaintiff's is denied leave to amend, and the case is dismissed.

---

[1] Defendant styled its supplemental briefing as a motion to dismiss the newly proposed claims. See Dkt. No. 56, 59. Because the court did not grant plaintiff's attempted amendment but merely asked for additional briefing to respond to plaintiff's filings, the court will treat defendant's supplemental papers as an opposition to plaintiff's request for leave to amend.

1

## BACKGROUND

On April 13, 2000, plaintiff Arnold Reeves was sentenced by the United States District Court for the Southern District of New York to a twenty-year term of imprisonment. Def.'s Statement Pursuant to Local Rule 56.1 ("Def.'s 56.1") ¶ 1. He was thereafter housed at a number of different BOP correctional facilities before arriving at FCI Fort Dix, a low security facility, in February 2008. Id. ¶¶ 2-3. On February 18, 2010, plaintiff was temporarily transferred to the Metropolitan Detention Center ("MDC") located in Brooklyn, New York, in order to alleviate a short-term overcrowding problem at FCI Fort Dix. Id. ¶ 4. When plaintiff arrived at the MDC, defendant became plaintiff's Unit Manager. Id. ¶¶ 9, 10. A BOP employee since March 2000, defendant had previously worked as a Unit Manager at FCI Fort Dix. Id. ¶¶ 6-8. Defendant remained plaintiff's Unit Manager until sometime in April 2010, and plaintiff was transferred back to FCI Fort Dix on July 13, 2010. Id. ¶¶ 5, 11.

Plaintiff asserts he filed complaints at FCI Fort Dix that caused BOP employee Carmen Rodriguez to be fired in June 2009, that Ms. Rodriguez was a friend and co-worker of defendant, and that, as a consequence, defendant engaged in "unconstitutional fraud, retaliation and deception" against plaintiff from plaintiff's arrival at the MDC.[2] Am. Compl. (Dkt. No. 22) ¶¶ 5-9, 13-16. Specifically, plaintiff asserts that, on approximately February 18, 2010, defendant individually targeted plaintiff, out of forty new inmates, by making "arrogant sounding" comments such as, "'You are here now and you are assigned to my floor in this prison and I am in charge of your BOP detention.'" Id. ¶¶ 10-11; see also id. ¶¶ 56-59.

---

[2] Plaintiff asserts that he charged Ms. Rodriguez with perjury and that she was fired as a result. Am. Compl. ¶¶ 45-51. Defendants have adduced evidence that there was no Carmen Rodriguez in the employ of FCI Fort Dix during the relevant time period but that a Camille Rodriguez worked at the facility from 2004 to 2008. Def.'s 56.1 ¶¶ 45-46. Ms. Rodriguez took a leave of absence from her job in July 2008 and has since retired. She was neither terminated nor disciplined as a result of an inmate's complaint. Id. ¶¶ 47-48. In his opposition papers, plaintiff appears to assert that it was Camille Rodriguez against whom he filed complaints. See Pl.'s Resp. (Dkt. No. 42) at 9-10. The parties dispute whether defendant was aware of any complaints by plaintiff against Ms. Rodriguez. See id; Def.'s 56.1 ¶¶ 10, 49.

Plaintiff also alleges that, in further retaliation for plaintiff's prior complaints against Ms. Rodriguez, defendant unlawfully intercepted a letter that plaintiff attempted to mail from the MDC. According to plaintiff, on March 15, 2010, he deposited an outgoing letter to the BOP Designation and Sentence Computation Center ("DSCC"), located in Grand Prairie, Texas. Id. ¶¶ 60-62; see Def.'s 56.1 ¶ 12. The DSCC is tasked with, among other things, assigning each BOP inmate to a federal correctional facility of the appropriate security level. Def.'s 56.1 ¶ 12. The security levels, from lowest to highest, are minimum security, low security, medium security and high security. Id. ¶ 13. In order to match BOP inmates with a federal correctional facility of the appropriate security level, the DSCC's staff assigns each BOP inmate a security classification based on a number of factors, including what is called a Public Safety Factor ("PSF"). Id. ¶¶ 14-15. A PSF is information about an inmate's current offense, current sentence, criminal history, or behavior at BOP correctional facilities that warrants increased security measures to ensure the protection of society. Id. ¶ 16. A PSF is applied, for example, when the crime for which the inmate is being incarcerated is the kind of crime categorized on the BOP's Offense Severity Scale as being of the greatest severity. Id. ¶ 17. The DSCC's staff is authorized to waive an inmate's PSF under certain conditions, the effect of which is to reduce an inmate's security classification. Id. ¶¶ 18-19.

In plaintiff's letter to the DSCC, he requested a PSF waiver and stated that he believed it would enable him to transfer to a minimum security correctional facility, where he could purportedly enroll in the BOP's Residential Drug Abuse Program. Id. ¶¶ 35-37; Compl. (Dkt. No. 1). at 14-15. Plaintiff states that he had a meeting with defendant on April 25, 2010, at which defendant returned the letter to plaintiff. Am. Compl. ¶¶ 17-18. Plaintiff alleges that defendant had removed the letter from the outgoing mail "in order to damage the Plaintiff's

3

prison custody security level" and marked it with a fabricated stamp falsely indicating that it had been received by the DSCC on March 29, 2010. Id. ¶¶ 61-68. He maintains that, as a result of defendant's interception of his letter, he was wrongfully detained at both medium and low level security prisons when he "belonged in the BOP minimum out custody 'camp' detention." Id. ¶ 78. He alleges that, had defendant not removed his letter from the mail in retaliation for plaintiff's causing Ms. Rodriguez to be fired, the BOP would have transferred him to such a facility. Id. ¶¶ 78-81.

According to defendant, his actions complied with procedure. Inmates seeking to obtain a PSF waiver or some other change in his security classification must direct their request to their unit team at the particular federal correctional facility at which he is housed, not to the DSCC. Def.'s 56.1 ¶ 20. If an inmate's unit team finds that the inmate's request is justified, the staff at the inmate's federal correctional facility will communicate its findings with the DSCC's staff, who reviews the matter and makes the final determination. Id. ¶¶ 21-22. If an inmate contacts the DSCC directly, the DSCC stamps the inmate's letter with one of several legends indicating that the correspondence was received by the DSCC and forwards the inmate's correspondence to the federal correctional facility housing the inmate. Id. ¶¶ 23-29. Plaintiff's March 15 letter is stamped with a legend indicating that it was received by the DSCC on March 29, 2010. Def.'s 56.1 ¶ 40. Where the DSCC forwards such inmate correspondence to the MDC, it is the MDC's practice to forward that correspondence to the inmate's unit team for a response, if needed. Id. ¶¶ 32-34. According to affidavits submitted by defendant, consistent with this practice, the MDC's warden sent plaintiff's letter to defendant, who, as plaintiff's Unit Manager, provided a response to plaintiff. Def.'s 56.1 ¶ 42, 44.

Plaintiff claims that, after meeting with defendant, he asked for the forms necessary to

4

exhaust his administrative remedies but "defendant with his Unit Team made the plaintiff's exhaustion of prison remedies unavailable." Am. Compl. ¶¶ 21-27. Pursuant to the BOP's Administrative Remedy Program, plaintiff has submitted approximately seventy administrative remedy requests, about forty-five of which postdate the events alleged in this action. Supplemental Decl. of Crista M. Colvin (Dkt. No. 57-5) ¶¶ 7, 18. None of the requests have pertained to the allegations against defendant in this suit. Id. ¶¶ 18-21.

Plaintiff filed the instant action on June 16, 2010. In lieu of responding to the complaint, defendant filed a motion to dismiss on February 9, 2011. See Dkt. No. 19. Plaintiff thereafter sought leave to amend, which was granted as a matter of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) and which plaintiff filed on March 25, 2011. See Dkt. No. 21. On July 19, 2011, defendant filed a motion to dismiss or, in the alternative, for summary judgment. See Dkt. No. 25. After defendants' motion was fully briefed, plaintiff sought to supplement his complaint by bringing purportedly-related claims pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 et seq. See Dkt. Nos. 44, 46, 47, 48. Defendant was afforded the opportunity to respond and opposed plaintiff's new claims. See Dkt. No. 49.

## DISCUSSION

It is well settled that, absent consent, the United States is immune from suit, as are its agencies and its officers when the latter act in their official capacities. FDIC v. Meyer, 510 U.S. 471, 475 (1994); Dotson v. Griesa, 398 F.3d 156, 177 (2d Cir. 2005). Therefore, a waiver of sovereign immunity is a jurisdictional prerequisite to a suit against the federal government or its officers. Providing a limited waiver of sovereign immunity, the FCTA affords the sole remedy, in the form of a suit against the United States, for a "personal injury . . . arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting

within the scope of his office or employment." See 28 U.S.C. §§ 1346(b)(1), 2679; Celestine v. Mount Vernon Neighborhood Health Ctr., 403 F.3d 76, 80 (2d Cir. 2005). Where a plaintiff seeks to proceed against a federal officer in his individual capacity, he must do so pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), which permits recovery for certain constitutional violations by federal agents. Carlson v. Green, 446 U.S. 14, 18 (1980).

Plaintiff initiated the instant action against defendant, a federal employee, purporting to bring claims pursuant to 42 U.S.C. § 1983 ("§ 1983") for "retaliation, fraud, deception, and civil mail fraud." See Compl. at 1; Am. Compl. As § 1983 actions are only available against state actors, the court construes plaintiff's complaint to assert an action for first amendment retaliation and due process violations pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Because plaintiff has failed to exhaust the administrative remedies necessary to pursue these claims, the court dismisses them for lack of subject matter jurisdiction. The court construes plaintiff's submission seeking to add FTCA claims against the United States and the BOP as a motion for leave to amend and denies it, as plaintiff articulates no claim maintainable against those defendants.

I. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2d Cir. 2009). Although still subject to the facial probability standard, a pro se complaint must be construed liberally and is held to less

6

stringent standards than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007); see Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996); Hidalgo v. Kikendall, No. 09-Civ-7536, 2009 U.S. Dist. LEXIS 66020, at *7-8 (S.D.N.Y. July 22, 2009).

Moreover, as the party seeking to invoke the jurisdiction of the court, plaintiff bears the burden of demonstrating that subject matter jurisdiction is proper based on facts existing at the time the complaint was filed. Scelsa v. City Univ. of N.Y., 76 F.3d 37, 40 (2d Cir. 1996). Under Rule 12(b)(1), the court must accept as true all material factual allegations in the complaint but will not draw inferences favorable to the party asserting jurisdiction. J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004); Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). For the purposes of evaluating subject matter jurisdiction, the court may consider affidavits and other materials beyond the pleadings. See J.S. ex rel. N.S., 386 F.3d at 110; Robinson v. Gov't of Malaysia, 269 F.3d 133, 140-41 & n.6 (2d Cir. 2001).

II.     Plaintiff's Bivens Claims

"Under the Prison Litigation Reform Act ("PLRA"), prisoners must first exhaust available administrative remedies before bringing an action alleging violations of federal law." Hartman v. Holder, No. 00-CV-6107, 2005 U.S. Dist. LEXIS 20338, at *26 (E.D.N.Y. Aug. 21, 2005) ("Hartman I") (citations omitted); 42 U.S.C. § 1997e(a) ("[N]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Federal prisoners must, therefore, exhaust the PLRA's inmate grievance procedures

before suing under Bivens. Id. at 524. "Where a prisoner fails to exhaust administrative remedies but asserts a plausible reason for the failure, a court conducts a three part inquiry." Hartman I, 2005 U.S. Dist. LEXIS 20338 at *12-13. "Specifically, it determines whether: (1) administrative remedies were in fact available; (2) defendants forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it; or (3) defendants acted to inhibit the inmate from exhausting his remedies." Id. at *13 (citing Hemphill v. State of New York, 380 F.3d 680, 686 (2004)). "Courts also consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." Id. (citation and internal quotation marks omitted).

Here, it is undisputed that plaintiff did not, as required, pursue a complaint under the BOP's multi-tier administrative remedy system. Plaintiff attempts to excuse this failure, at least with regard to his failure to complain about defendant's purported interception of his letter, by asserting that defendant was in charge of providing plaintiff with the exhaustion documentation and that "defendant with his Unit Team made the plaintiff's exhaustion of prison remedies unavailable in the instant charged staff misconduct." Am. Comp. ¶¶ 25, 26. Defendant, for his part, has submitted a sworn affidavit attesting that plaintiff never asked him for the relevant forms and stating that he in no way caused the administrative remedy process to be unavailable to plaintiff. Decl. of Jermaine L. Wilkins (Dkt. No. 40-6) ¶ 13. In light of this evidence, plaintiff's conclusory allegations that defendant and his colleagues blocked plaintiff's access to the BOP's Administrative Remedy Program are insufficient for the purpose of avoiding dismissal. See Mitchell v. Senkowski, 158 Fed. Appx. 346, 350 (2d Cir. 2005) ("Appellant's conclusory assertion that prison officials obstructed his utilization of the grievance process is insufficient to raise a genuine dispute of material fact that would defeat summary judgment.").

8

Even were defendant's statement disregarded and plaintiff's conclusory assertions credited, plaintiff would still fall short of demonstrating that defendant inhibited his ability to exhaust. Plaintiff asserts that he learned of defendant's purported interception of his mail on April 25, 2010. BOP procedures thereafter afforded him twenty days to begin the exhaustion process. See 28 C.F.R. § 542.14 ("The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred."). The record establishes that defendant ceased being plaintiff's Unit Manager at the end of April 2010, leaving plaintiff at least two weeks to initiate, in a timely manner, the administrative exhaustion process. Plaintiff offers no justification for his failure do so. Accordingly, his Bivens claims are properly subject to dismissal for lack of jurisdiction due to plaintiff's failure to exhaust.

III. Plaintiff's Request for Leave to Amend

Where, as here, a petitioner is no longer entitled to amend his pleading as a matter of course, he may amend "only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). Although Rule 15(a) specifically provides that such "leave shall be freely given when justice so requires," id., district courts have discretion to deny leave "where necessary to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive," Ching v. United States, 298 F.3d 174, 180 (2d Cir. 2002), or "where amendment would be futile," In re Tamoxifen Citrate Antitrust Litig., 429 F.3d 370, 404 (2d Cir. 2005).

On November 22, 2011, after defendant's second motion to dismiss had been fully briefed, plaintiff filed a submission seeking to add claims against the United States and the BOP pursuant to the FTCA.[3] Dkt. No. 44; see also Dkt. No. 46, 47, 48. Because the court cannot

---

[3] Plaintiff's filings in this regard may have been prompted by arguments raised in defendant's motion to dismiss. In that motion, defendant argued that, to the degree the court might elect to construe liberally plaintiff's claim for "civil

devise, from plaintiff's assertions, a potential claim for relief cognizable against these defendants under the limited exception to sovereign immunity that the FTCA provides, it denies plaintiff leave to amend to add these claims. Although it is axiomatic that a pro se complaint must be construed liberally and is held to less stringent standards than pleadings drafted by lawyers, Erickson v. Pardus, 551 U.S. 89, 94 (2007), plaintiff's generalized assertion that he brings a claim under the FTCA is insufficient to permit such a claim to proceed. According to plaintiff, his newly asserted FTCA claims arises out of conduct "meant to be identical" to the tort purportedly previously alleged against defendant in his amended complaint. Dkt. No. 47. Plaintiff, therefore, ostensibly seeks to hold defendant liable for "civil mail fraud" and forgery. In his new filings, plaintiff also accuses various government employees of perjuring themselves in affidavits submitted in support of defendant's motion to dismiss. To the degree that plaintiff seeks relief for such alleged misconduct, no such relief is available under the FTCA.

Under the FTCA, the federal government's waiver of sovereign immunity extends only to those torts committed by government employees 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the [tortious] act or omission occurred.'" Chen v. United States, 854 F.2d 622, 625-626 (2d Cir. N.Y. 1988) (citing 28 U.S.C. § 1348(b)). "Thus, for liability to arise under the FTCA, a plaintiff's cause of action must be comparable to a cause of action against a private citizen recognized in the jurisdiction where the tort occurred." Id. (citation and internal quotation marks omitted); see Akutowicz v. United States, 859 F.2d 1122, 1125 (2d Cir. 1988) ("The FTCA does not extend to conduct governed exclusively by federal law, or to conduct of a governmental

---

mail fraud" as a claim for fraud, it would be subject to dismissal for lack of administrative exhaustion because plaintiff had not complied with the FTCA's administrative exhaustion requirement, insofar as plaintiff first submitted an administrative tort claim months after filing this action. See Dkt. No. 36 at 24-25; Def.'s 56.1 ¶ 27-28. In his proposed supplemental complaint, plaintiff appears to try to offer justifications to excuse that failure.

10

nature or function that has no analogous liability in the law of torts." (internal citations and quotation marks omitted)). New York does not provide a private cause of action for mail fraud, forgery, or perjury.[4] See, e.g., Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002) (affirming dismissal of forgery and perjury claims on the ground that they are crimes and, therefore, do not give rise to civil causes of action); Abrahams v. Incorporated Village of Hempstead, No. 08 CV 2584, 2009 U.S. Dist. LEXIS 46725, at *8 (E.D.N.Y. June 2, 2009) (dismissing civil suit because "there is no private right of action for perjury" under New York law)). As such, plaintiff may not seek relief for these alleged wrongs in an FTCA suit, and his request to amend his complaint to assert additional tort claims against the United States and BOP is denied.[5]

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted, and plaintiff's request for leave to amend is denied.[6] The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of this order would not be taken in good faith and, therefore, in forma pauperis status is denied for the purpose of any appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962). The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

S/Judge Ross

Allyne R. Ross
United States District Judge

---

[4] Nor is a private right of action for mail fraud available under the federal statue criminalizing mail fraud. See Kirk v. Heppt, 532 F. Supp. 2d 586, 590 (S.D.N.Y. 2008).

[5] The motion is denied with prejudice. Plaintiff's request constitutes the second attempt to amend his complaint and was filed well after defendant's had twice moved to dismiss the case. Based on the nature of plaintiff's claims, there is no suggestion that granting further leave to amend would cure its deficiencies. The court accordingly finds that any further amendment would prejudice defendant and, in all likelihood, prove futile.

[6] In a letter dated August 6, 2012, plaintiff appears to take issue with some aspect of the BOP's oversight of his detention at FCI Fort Dix. See Dkt. No. 61. Any claims in connection with his detention there must be brought in the District of New Jersey. See 28 U.S.C. § 1391(b).

Dated: August 31, 2012
Brooklyn, New York

SERVICE LIST:

**Plaintiff**:

Arnold Reeves
# 38595-054
FCI Fort Dix
Federal Correctional Institution
P.O. Box 2000
Fort Dix, NJ 08640